Taylor C. Bartlett, N.J. Bar no. 142752015
**Heninger Garrison Davis, LLC**
220 Saint Paul Street
Westfield, NJ 07090
Tel: 205-326-3336
taylor@hgdlawfirm.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| TAMMY DEVANE, MICHELLE BARBATO, PETER BARBATO, AND SHARON MAROLDI, | Civil Action No. 3:19-cv-09899 (BRM) (LHG) |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION TO DISMISS** |
| CHURCH & DWIGHT CO, INC., | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STANDARD OF REVIEW ....................................................................2

III.  ARGUMENT..........................................................................................3

  A.   The Complaint is Replete with Well Plead Allegations of False and
       Deceptive Marketing. ...................................................................3

    1.   Plaintiffs Plead that the Products were Misrepresented and Plead the
         FDA Interpretation of "Complete."....................................................4

    2.   Plaintiffs Plead that it is False to Advertise the Products as
         "Complete."........................................................................................6

    3.   The Motion Applies the Wrong Standard at the Motion to Dismiss
         Stage. ................................................................................................7

  B.   Plaintiffs Allege that They Suffered an Ascertainable Loss. ...................13

    1.   Ascertainable Loss is Calculable from the Pleadings. .......................13

    2.   Plaintiffs Sufficiently Plead a Causal Connection. ...........................16

  C.   Plaintiffs Alleged Actual Damages as Required by the FDUTPA. ........16

  D.   Plaintiffs' Breach of Implied Warranty Survives the Motion.................19

  E.   The Primary Jurisdiction Doctrine Does Not Mandate Dismissing or
       Staying Plaintiffs' Claims. ...................................................23

    1.   Deciding Plaintiffs' Claims Do Not Require Any Unique Expertise on
         the part of the FDA............................................................24

    2.   Church & Dwight Has Identified No Pending Hearings or Imminent
         Rulings by the FDA which Will Create the Potential for Conflicting
         Decisions. ................................................................................29

    3.   An Illinois District Court Has Already Ruled Against Church &
         Dwight on this Very Issue.............................................................32

  F.   Plaintiffs Have Standing.........................................................................34

IV.   CONCLUSION AND LEAVE TO AMEND .............................................35

# TABLE OF AUTHORITIES

## CASES

Ackerman v. Coca-Cola Co.,
  2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ................................. 27

Annecharico v. Raymour & Flanigan,
  2016 U.S. Dist. LEXIS 164769 (D.N.J. Nov. 30, 2016) ................................... 15

Bell Atl. Corp. v. Twombly,
  550 U.S. 554 (2007) ............................................................................ 2, 3, 4, 5, 6

Bohlke v. Shearer's Foods, Ltd. Liab. Co.,
  2015 U.S. Dist. LEXIS 6054 (S.D. Fla. Jan. 20, 2015) ..... 17, 18, 19, 25, 29, 31

Bowman v. Wilson,
  672 F.2d 1145 (3d Cir. 1982) .............................................................................. 34

Burton v. Hodgson Mill, Inc.,
  2017 U.S. Dist. LEXIS 53160 (S.D. Ill. Apr. 6, 2017) ................................30, 32

Chacanaca v. Quaker Oats Co.,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................. 27

Chattin v. Cape May Greene, Inc.,
  581 A.2d. 91 (N.J. Super. 1990) ................................................................... 10, 11

Colburn v. Upper Darby Township,
  838 F.2d 663 (3d Cir. 1988), cert. denied, 489 U.S. 1065, 103 (1989), ........... 36

Crozier v. Johnson & Johnson Consumer Cos.,
  901 F. Supp. 2d 494 (D.N.J. 2012) ............................................................... 20, 21

Fenner v. GM, LLC (In re Duramax Diesel Litig.),
  298 F. Supp. 3d 1037 (E.D. Mich. 2018) ........................................ 31, 32, 33, 34

Hammer v. Vital Pharms., Inc.,
  2012 U.S. Dist. LEXIS 40632 (D.N.J. March 26, 2012) ...................... 11-12, 12

Hemy v. Perdue Farms, Inc.,
  2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011) ................................. 8, 9

Garcia v. Kashi Co.,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) .................................................. 25, 26, 29

In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices
Litig.,
    2013 U.S. Dist. LEXIS 37152 (D.N.H. March 18, 2013) .................... 26, 29, 30

In re Frito-Lay N. Am., Inc.,
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. August 29, 2013) ......................... 27

In re Gerber Probiotic Sales Practices Litig.,
    2014 U.S. Dist. LEXIS 44810 (D.N.J. Mar. 31, 2014) ................................ 4, 20

Langan v. Johnson & Johnson Consumer Cos.,
    95 F. Supp. 3d 284 (D. Conn. 2015) ............................................................... 27

Lieberson v. Johnson & Johnson Consumer Cos.,
    865 F. Supp. 2d 529 (D.N.J. 2011) ...................................................... 21, 22, 36

Lockwood v. Conagra Foods, Inc.,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) ......................................................... 27

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992) ......................................................................................... 34

Mason v. Coca-Cola Co.,
    2010 U.S. Dist. LEXIS 65107 (D.N.J. June 30, 2010) ......................... 24, 31, 32

MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,
    496 F.2d 214 (3d Cir. 1974) ........................................................................... 24

Neitzke v. Williams,
    490 U.S. 319 (1989) ....................................................................................... 2-3

Nelson v. Xacta 3000, Inc.,
    2010 U.S. Dist. LEXIS 47128 (D.N.J. May 12, 2010) ..................................... 20

Pension Benefit Guar. Corp. v. White Consol. Indus.,
    998 F.2d 1192 (3d Cir. 1993) ......................................................................... 12

Pom Wonderful Ltd. Liab. Co. v. Ocean Spray Cranberries, Inc.,
    642 F. Supp. 2d 1112 (C.D. Cal. 2009) ......................................................... 31

Reiter v. Cooper,
    507 U.S. 258 (1993) ....................................................................................... 23

Rikos v. Procter & Gamble Co.,
    782 F. Supp. 2d 522 (S.D. Ohio 2011) .......................................................... 26

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ............................................................................ 3

Solo v. Bed Bath & Beyond,
    2007 U.S. Dist. LEXIS 31088 (D.N.J. Apr. 26, 2007) ................... 12, 14, 16, 17

United States v. Students Challenging Regulatory Agency Procedures,
    412 U.S. 669 (1973) ...................................................................... 34, 35

United States v. Union Corp.,
    194 F.R.D. 223 (E.D. Pa. 2000) ........................................................ 35

Us, Inc. v. Step Two, S.A.,
    318 F.3d 446 (3rd Cir. 2003) ..................................................... 3, 7, 10

**OTHER AUTHORITIES**

21 C.F.R. § 109 .................................................................................. 7

Fed. R. Civ. P. 12 ..................................................................... 3, 7, 35

5 ADMINISTRATIVE LAW § 47.03 (2019) ............................................. 31

## I.     INTRODUCTION

Plaintiffs Tammy DeVane ("DeVane"), Michelle Barbato ("M. Barbato"), Peter Barbato ("P. Barbato"), and Sharon Maroldi ("Maroldi" and collectively "Plaintiffs") bring their suit against Defendant Church and Dwight Company, Inc. ("Church & Dwight") for breach of express warranty, breach of implied warranty, violation of the New Jersey Consumer Fraud Act ("NJCFA"), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and for equitable and injunctive relief.[1]   Church & Dwight moves to dismiss ("Motion") seeking dismissal of each and every claim, arguing that it should be able to call its Products "Complete Multivitamins" despite them not being "complete" and lacking several "essential" vitamins.

At issue is Church & Dwight's marketing and labeling for the following three multivitamins: "L'il Critters Multivitamins," "Vitafusion Women's Complete Multivitamins," and "Vitafusion Men's Complete Multivitamins" (the "Products"). Doc. 10 at ¶ 1. The Products' packaging and labeling prominently state that they are "Complete Multivitamins" and Plaintiffs allege that this means the Products contain all the "essential" nutrients. Id. Plaintiffs support their allegations that advertising the Products as "Complete Multivitamins" means that they contain all 13 essential

---

[1] Plaintiffs abandon their breach of express warranty, breach of implied warranty under Florida law, and their claim for injunction relief.

vitamins by citing federal statutory law and the Food and Drug Administration's own guidance.  Id. at ¶¶ 14–19.  Plaintiffs allege that Church & Dwight's marketing and labelling are false and misleading because they interpret "'complete' and containing the 'essential nutrients' as meaning that the Products contain all the essential nutrients, including those missing from them."  Id. at ¶ 3.[2]  However, the Products are not "complete" because they do not contain all 13 essential vitamins.  Id. at ¶ 2.  Finally, Plaintiffs each allege that they purchased the Products because they were looking for a "Complete Multivitamin" which would contain each of the essential 13 vitamins.  Id. at ¶¶ 32, 40, 45, & 52.  They did not receive the benefit of their bargain and were thus damaged.  Id. at 21–22.

## II.    STANDARD OF REVIEW

A complaint must include "enough factual matter (taken as true) to suggest" that the plaintiff will be able to meet the required elements of the given legal claim. Bell Atl. Corp. v. Twombly, 550 U.S. 554, 556 (2007).  To survive a motion to dismiss, a complaint is adequate if it identifies enough "facts that are suggestive enough to render the [legal elements] plausible."  Id.  Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.; see also Neitzke v. Williams, 490 U.S. 319, 327 (1989)

_____

[2] Paragraph three of the Amended Complaint, alone, dispels Church & Dwight's inaccurate and primary argument repeated throughout each section; namely, that Plaintiffs failed to claim that the Products' advertising "was false."

("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a complaint may proceed even if it appears "that a recovery is very remote and unlikely"). "[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 548.  Finally, the Court must accept as true the allegations plead.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

## III. ARGUMENT

### A. The Complaint is Replete with Well Plead Allegations of False and Deceptive Marketing.

Church & Dwight incorrectly argues that Plaintiffs failed to allege false and deceptive marketing.  See Doc. 16-1 at 11.  Notably, it does not dispute that Plaintiffs are correct in alleging that the Products do not contain vitamins K, B-1, B-2, and B-3.  See Doc. 16-1 at 11.  It also admits that the "FDA" has interpreted 13 vitamins to be "essential," including vitamins K, B-1, B-2, and B-3.  Id.  Because it cannot dispute these facts, Church & Dwight attacks Plaintiffs' Amended Complaint on 1) an unjustifiable misapprehension of Plaintiffs' allegations of falsity and deceit and 2) using the wrong standard for the Motion.

Church & Dwight wrongly argues that the Amended Complaint lacks "any allegation that Plaintiffs themselves were deceived . . . ."  Id.  "At the pleading stage

. . . a plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." In re Gerber Probiotic Sales Practices Litig., 2014 U.S. Dist. LEXIS 44810, at *16 (D.N.J. Mar. 31, 2014) (internal quotations omitted). In order to combat Plaintiffs' well plead (and admittedly true) allegations of false and deceptive marketing, Church & Dwight attempts to alter the pleading's standard by raising facts that appear to contradict Plaintiffs' allegations. Id. at 15-17. The standard is not whether Plaintiffs' plead facts are true and accurate, but whether "it appears beyond doubt" that Plaintiffs cannot prove their facts. See Twombly, 550 U.S. at 548. Plaintiffs allege that Church & Dwight's marketing and labelling of the Products are false and misleading because they interpret "'complete' and containing the 'essential nutrients' as meaning that the Products contain all the essential nutrients, including those missing from them." Doc. 10 at ¶ 3.

**1.  Plaintiffs Plead that the Products Were Misrepresented and Plead the FDA Interpretation of "Essential."**

Church & Dwight's misapprehension of the allegations appears to stem from its failure to read the Amended Complaint as a whole. It is not disputed that the Products are advertised as "Complete Multivitamins." See Doc. 16-1 at 11. It is unfair and inaccurate to argue, as Church & Dwight does, that Plaintiffs' allegations of falsity and deceit do not relate to their "theory" of what vitamins a "Complete Multivitamin" should contain. Id. at 11. This is because, while it is true that

Plaintiffs allege that they believed the Products "'contained all the vitamins' they and/or their family members 'needed' or 'would need,'" this is not the only allegation they make. Church & Dwight's tortured argument is simply unsupported by the Amended Complaint as Plaintiffs also expressly allege that "Church and Dwight's Products are not, in fact, 'complete,' . . . as they lack, at least, several of the essential vitamins identified by the FDA as being necessary for human health." Doc. 10 at ¶ 2. The Plaintiffs also identify the exact vitamins missing in the Products from the FDA's essential vitamin list: "vitamin K, thiamin (vitamin B-1), and riboflavin (vitamin B-2), while Vitafusion Men's Complete Multivitamins and L'il Critters Multivitamins additionally lack niacin (vitamin B-3)." Id. Accordingly, Plaintiffs plead the Products were misrepresented because they were not "Complete Multivitamins."

It is also simply false to argue that "Plaintiff do not claim they understood the advertising for the Products to communicate that the Products contain all 13 vitamins identified as "essential" by the FDA. See Doc. 16-1 at 11. This is false because Plaintiffs expressly allege that:

> "Plaintiffs and other reasonable consumers interpret Church & Dwight's marketing of the Products as "complete" and containing the "essential nutrients" as meaning that the Products contain all the essential nutrients, including those missing from them.

Doc. 10 at ¶ 3.

### 2.   Plaintiffs Plead that it is False to Advertise the Products as "Complete."

It is wrong for Church & Dwight, as it does, to claim that Plaintiffs failed to allege that advertising the Products as "Complete Multivitamins" was false.  See Doc. 16-1 at 11.  The Amended Complaint expressly alleges that "Church & Dwight's Product are not, in fact, 'complete.'"  Doc. 10 at ¶ 2.  While this paragraph does not use the term "false," it cannot realistically be disputed that this sentence means that advertising the Products as "complete" is untrue and therefore false.  Additionally, each Plaintiff specifically and expressly alleges that the particular product purchased by each was falsely advertised as being a "Complete Multivitamin" because none contains each of the 13 essential vitamins.  Id. at ¶¶ 21, 22, 33 ("[s]uch false representations"), 40 ("false representation and warranty"), 45 ("false representation and warranty"), 52 ("false representation and warranty").  Apparently acknowledging this flaw in its argument, Church & Dwight's attempts to require an element of falsity that is not supported by the law; namely, that Plaintiffs must allege that they or their family members "suffered a deficiency in any of the four vitamins not present in the Products."[3]  Plaintiffs are not required to plead this and their failure to do so matters not.

---

[3] Indeed, Church & Dwight cites no supporting law and Plaintiffs have also been unable to find any.

### 3.     The Motion Applies the Wrong Standard at the Motion to Dismiss Stage.

Church & Dwight's Motion applies the wrong standard to seek dismissal of the Amended Complaint.   Implicitly acknowledging Plaintiffs meet the pleadings standard under Rule 12(b)(6), Church & Dwight spends pages 12 through 17 arguing that Plaintiffs' plead interpretation of "complete" and the "reasonable consumer['s]" interpretation of "complete" are untrue.  See Doc. 16-1 at 12-17.  However, the Court must accept as true the allegations plead at the motion to dismiss stage.  Toys "R" Us, 318 F.3d at 457.  Furthermore, the insertion of what a "reasonable consumer" would interpret "complete" to mean at this stage is wrong as it does not take Plaintiffs' allegations as true.  Accordingly, as Plaintiffs have alleged deceitful and false marketing of the Products, their Amended Complaint survives the Motion.

Although Plaintiffs do not believe that they must support with evidence their factual allegations at this stage, they will address Church & Dwight's attacks on the truth of Plaintiffs' well-plead factual allegations.  Firstly, Church & Dwight attacks Plaintiffs' allegation that the FDA does not "require" that "dietary supplements" include each of the 13 "essential" vitamins to be "complete" or that the failure to include each of the 13 vitamins makes the Products incomplete.  Doc. 16-1 at 12.  However, Plaintiffs alleged that under 21 C.F.R. § 109(c)(8)(iv) and the FDA's 2009 publication "Fortify Your Knowledge About Vitamins," that all 13 vitamins, including vitamins K, B-1, B-2, and B-3, are "essential in human nutrition."  Doc.

10 at ¶ 14.  It is not disputed that the Products do not contain vitamins K, B-1, B-2, and B-3.  <u>See</u> Doc. 16-1.  Thus, whether a "Complete Multivitamin," as the Products are labelled, should include each of the 13 vitamins determined as "essential" by the FDA is a question of fact not ripe for decision under this Motion.  To be clear, Church & Dwight never cites any law as to what a "Complete Multivitamin" should contain, it simply attacks Plaintiffs' factual assertions as untrue asking this Court to believe its interpretation instead of Plaintiffs.

Church & Dwight's citation to <u>Hemy v. Perdue Farms, Inc.</u>, 2011 U.S. Dist. LEXIS 137923, at *50–51 (D.N.J. Nov. 30, 2011), is inapposite because the allegation of false advertising there was that because Perdue inhumanely slaughtered chickens, an advertisement that the chickens were "humanely raised" was false. Doc. 16-1 at 1.  The <u>Hemy</u> court reasoned that the plaintiff there failed to plead a connection between being "humanely raised" and being "humanely slaughtered." <u>Hemy</u>, 2011 U.S. Dist. LEXIS 137923 at *50-51.  The Plaintiffs here do not have to make that connection because the false promise is that the Products were "Complete Multivitamins" and the falsity claimed is that there were not, in fact, "complete." Here, unlike in <u>Hemy</u>, the falsity involves one fact question: whether the Products were "complete" or not.  Plaintiffs allege that they were not and Church & Dwight counters that they were.  A simple fact question such as this is not ripe for decision via a motion to dismiss.

Secondly, Church & Dwight attacks the veracity of Plaintiffs' allegations that other multivitamin producers correctly advertise their multivitamins as "complete." See Doc. 16-1 at 13. In making this argument, Church & Dwight again refers to the "reasonable consumer" rather than acknowledging what the Plaintiffs here actually plead. Id. For context, Plaintiffs here plead that other multivitamin manufacturers that advertise their multivitamins as "complete" actually include all 13 essential vitamins. Doc. 10 at ¶ 27. Similarly, those that leave out the four missing vitamins not found in Church & Dwight's Products do not label their multivitamins as "complete." Id. at 28. Plaintiffs plead that this helps support their reasonable understanding of "complete." Id. at ¶ 27. Church & Dwight's attack here is simply that Plaintiffs' factual allegations are wrong, necessarily a question of fact.

Thirdly, Church & Dwight argues that "consumers" should read the "clearly disclosed supplement facts" on the back of the Products and should ignore the large and prominent expression of "Complete Multivitamin" on the front of the Products. Id. at 13-14. It goes even further arguing that Plaintiffs should have understood the Products were "Dietary Supplements," which apparently is intended by Church & Dwight to contradict that the Products are labelled as a "Complete Multivitamin." This argument does nothing more than attack Plaintiffs' allegations as untrue which provides no support for the Motion.

Additionally, Church & Dwight provides us with its interpretation of

"complete," Doc. 16-1 at 14, which contradicts Plaintiffs' allegations.  Compare Doc. 16-1 at 14 ("each of the Products, taken in conjunction with a consumer's diet, is a 'complete' supplement that provides the vitamins that are essential in human nutrition that may be missing from the consumer's diet.") with Doc. 10 at 2 ("'complete' and containing the 'essential nutrients' as meaning the Products contain all the essential nutrients, including those missing from them.").  Thus, a factual dispute exists and the correct interpretation of "complete" cannot be determined at this stage because Plaintiffs' allegations must be taken as true.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

Church & Dwight's reliance on Chattin v. Cape May Greene, Inc., 581 A.2d. 91 (N.J. Super. 1990), for the proposition that "whether a pleading sufficiently alleges an advertisement is false or deceptive requires consideration of the advertisement in its entirety and context" is misplaced.  See Doc. 16-1 at 14.  In contrast to the issue before the Court here, Chattin is rendered on appeal after a final judgment was entered at trial and passes no judgment on the pleading's standard. Chattin, 581 A.2d.  at 94.  Furthermore, the facts in Chattin have absolutely no relation to those here.  In Chattin, the issue concerned taking a statement out of context to allege it is misleading.  Chattin, 581 A.2d at 608.  Furthermore, there was no evidence that the plaintiffs there had "seen, read, or relied upon" the allegedly false advertising.  Id. at 607.  Here, there is no argument nor fact to support an

assertion that Plaintiffs have taken the false statement "Complete Multivitamin" out of context.  Additionally, each Plaintiff alleged that he or she saw, read, and relied upon the "Complete Multivitamin" advertisement prior to purchasing the Product. Doc. 10 at ¶¶ 30, 32, 38, 40, 43, 45, 50, 52.  Church & Dwight's attempt to interpose alternative understandings of "Complete Multivitamin" does not create a claim out of context but rather creates a question of whether the allegations made are true. Accordingly, <u>Chattin</u> provides no guidance on this Motion.

Fourthly, Church & Dwight creates another factual dispute when it argues that the USDA and DHHS "do not recommend or expect that dietary supplements will provide all the nutrients an individual needs."  Doc. 16-1 at 15.  It provides no citation for the proposition and seems to ask this Court to accept as true its argument that the Products are "dietary supplements" rather than "Complete Multivitamins." <u>See id</u>.  Church & Dwight has conflated the standard as to which party's allegations are entitled the presumption of truth.  It even goes outside the Amended Complaint, citing the NIH as finding that "average consumers receive enough from the foods they eat."  <u>Id</u>. at 15–16.  These factual arguments misapprehend Plaintiffs' allegations because Plaintiffs allege that they sought multivitamins that were "complete" and purchased the Products because they were advertised as "Complete Multivitamins."  Doc. 10 at ¶¶ 30, 32, 38, 40, 43, 45, 50, 52.

Finally, Church & Dwight's citation to <u>Hammer v. Vital Pharms., Inc.</u>, 2012

U.S. Dist. LEXIS 40632 (D.N.J. March 26, 2012), is misplaced.  See Doc. 16-1 at

17.  Church & Dwight wrongly asserts that it was Plaintiffs who argued that the

Products were falsely advertised because they contain the words "dietary

supplement."  See id.  To be clear, it is Church & Dwight that argues the Products

are "dietary supplements" and that whatever its definition of that is should override

its advertising that the Products are "Complete Multivitamins."  Id. at 14.  Setting

aside the obvious factual dispute here, Hammer actually dispels Church & Dwight's

earlier argument that "dietary supplement" somehow trumps "Complete

Multivitamin."  See Hammer, 2012 U.S. Dist. LEXIS 40632 at *15 (holding that

federal law provides that a "dietary supplement" is a product that among other

ingredients, contains one or more vitamin).  Hammer further contradicts Church &

Dwight's argument because it holds "a substance's intended use is relevant to

deciding whether the product is a dietary supplement."  Id.  Plaintiffs allege that the

Products are falsely advertised as "Complete Multivitamins" and thus being

"complete" is their intended use.  See Doc. 10 at ¶¶ 73–83 & 103–107.  Regardless,

the Court must accept Plaintiffs' allegations as true and Church & Dwight's attempt

to insert alternative factual scenarios does not support its Motion.[4]

---

[4] Church & Dwight makes a passing reference to P. Barbato's allegations that it
advertised vitafusion Men's as containing niacin.  Doc. 16-1 at 18 n. 6.  Here, it
admits that it falsely advertised vitafusion Men's as having niacin but says P.
Barbato failed to allege he saw or relied the advertisement.  Id.  In contradiction, P.
Barbato alleges (1) that he purchased Vitafusion Men's, (2) that prior to making this

### B.  Plaintiffs Allege that They Suffered an Ascertainable Loss.

### 1.  Ascertainable Loss is Calculable from the Pleadings.

Church & Dwight misapprehends the law when it argues that, at the pleadings stage, Plaintiffs must actually calculate and plead their losses to show an ascertainable loss.  See Doc. 16-1 at 20–21 (wrongly arguing that Plaintiffs must "identify the 'amount of money' by which the Products were of lesser value than what was promised").  Indeed, even the cases cited by Church & Dwight for this proposition do not support it; rather, they support a finding that Plaintiffs appropriately plead ascertainable loss.

In order to prove an ascertainable loss under the NJCFA, Plaintiffs must:

> demonstrate an 'ascertainable loss,' defined as 'a cognizable and calculable claim of loss due to the alleged CFA violation.' Ascertainable loss includes more than a monetary loss, and may occur 'when a consumer receives less than what was promised.' ('For their money, they received something less than and different from what they reasonably expected in view of defendant's presentations. This is all that is required to establish ascertainable loss.'); ('Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not

---

purchase he viewed the website where the admittedly false advertisement was found, and (3) that based upon the website he believed the product was "complete."  Doc. 10 at ¶ 42–45.  Notably, reliance is not an element of a NJCFA claim.  Solo v. Bed Bath & Beyond, 2007 U.S. Dist. LEXIS 31088, at * 10 (D.N.J. Apr. 26, 2007). Thus, he has met his pleading standard.  Furthermore, Church & Dwight's attempt to introduce evidence outside of the Pleadings is inappropriate and should not be relied upon at this stage.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

> known . . . . When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss…In cases involving alleged misrepresentations, as here, 'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.' Thus, as noted by Judge Sheridan, 'if plaintiff was promised a bed sheet containing a certain thread count and received a lower thread count of lesser value, an ascertainable loss may be realized.'

Solo v. Bed Bath & Beyond, 2007 U.S. Dist. LEXIS 31088, at *7-9 (D.N.J. Apr. 26, 2007) (internal citations omitted).  Accordingly, under Solo, Plaintiffs must show that they received a product that was less valuable and different from what they reasonably expected the product to be.  As shown below, Plaintiffs have done so and damages can be calculated therefrom.

Importantly, despite Church & Dwight's argument otherwise, Solo does not hold that a plaintiff must "identify the 'amount of money' by which the Products were of lesser value than what was promised."  See Doc. 16-1 at 21 (citing Solo, 2007 U.S. Dist. LEXIS 31088, at *10).  To be clear, Solo found that the plaintiff there "fail[ed] to specifically allege that what he did receive was of lesser value than what was promised, i.e., that the sheets he received were worth an amount of money less than the sheets he was promised."  Id.  This is not the same as Church & Dwight's argument that Plaintiffs must "identify the 'amount of money.'"  See Doc. 16-1.  Church & Dwight's misciting and unjustified stretching of Solo should be seen as what it is, a desperate attempt to heighten the pleading standard beyond what

is required.

Church & Dwight, in citing to <u>Annecharico v. Raymour & Flanigan</u>, 2016 U.S. Dist. LEXIS 164769 at *21 (D.N.J. Nov. 30, 2016), further misinterprets what is required to show ascertainable loss. <u>See</u> Doc. 16-1. To plead ascertainable loss, a plaintiff may plead that he or she bought a product that was essentially worthless. <u>See</u> <u>Annecharico</u>, 2016 U.S. Dist. LEXIS 164769 at *20. The <u>Annecharico</u> plaintiff failed to plead that the product at issue was worthless because he failed to identify the problems with it and did not allege its uselessness. <u>Id</u>. at *21.

In the present case, Plaintiffs have clearly—and repeatedly—alleged that Church & Dwight's misrepresentations contained on the Products' labeling rendered them "entirely valueless" to Plaintiffs. Doc. 10 at ¶¶ 33, 41, 46, & 53 ("Such false representations rendered Church & Dwight's product entirely valueless to Plaintiff DeVane and were it not for this false representation and warranty, she would not have purchased Church & Dwight's product."). Church & Dwight acknowledges these pleadings but attacks their veracity. Doc. 16-1 at 21-22. Again, Church & Dwight seeks to apply the wrong standard at the pleadings stage. Plaintiffs have also clearly—and repeatedly—alleged that, at a minimum, they paid more for Church & Dwight's products than they otherwise would have due to the misrepresentations contained on the products' labels. Doc. 10 at ¶¶ 33, 41, 46, & 53. ("Alternatively, because the product lacked all of the essential vitamins, it was worth less than she

paid.").

### 2.      Plaintiffs Sufficiently Plead a Causal Connection.

All that is required to connect the ascertainable loss with the misleading statements is to plead that 1) Plaintiffs purchased the Products because of the misleading statements or 2) Plaintiffs would not have purchased the Products had they known their true nature.  Solo, 2007 U.S. Dist. LEXIS 31088, at *12.  Each Plaintiff expressly pleads that he or she purchased the Products because they were advertised and labelled as "Complete Multivitamins."  Doc. 10 at ¶¶ 32, 40, 45, & 52.  Furthermore, each Plaintiff expressly plead that he or she would not have purchased the Products had he or she known they were not "complete."  Id. at ¶¶ 33, 41, 46, & 53.  Thus, under both avenues of proving a causal connection, Plaintiffs meet the pleading standard.

### C.      Plaintiffs Alleged Actual Damages as Required by the FDUTPA.

Church & Dwight argues that Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") should be dismissed because Plaintiffs failed to demonstrate that they suffered "actual damages" as required under the FDUTPA.  See Doc. 16-1 at 24-25.  Specifically, Church & Dwight argues that Plaintiffs have (1) done nothing more than make "conclusory allegations" regarding their damages which are "legally inadequate and facially implausible," and (2) failed to allege that any such damage was caused by any deceptive act or unfair practice

by Church & Dwight.  Id. at 25.  With respect to the second argument, Plaintiffs have clearly alleged that they relied upon Church & Dwight's misrepresentations, deceptive acts and unfair practices to their detriment as set forth in Section III.A, *supra*.  Accordingly, Plaintiffs need only address whether they have adequately alleged that they suffered "actual damages" as required by the FDUTPA.

In Bohlke v. Shearer's Foods, Ltd. Liab. Co., the plaintiff alleged three theories of damages: (1) that she paid a premium price for the products due to the representations made by the defendant on the labeling; (2) that she was entitled to a full refund of the purchase price because the misbranding of the product as "all natural" rendered it valueless; and (3) that the defendant's unfair practice of mislabeling its products rendered it valueless because "there is no market for an unlawful product."  Bohlke v. Shearer's Foods, Ltd. Liab. Co., 2015 U.S. Dist. LEXIS 6054 at *19-20 (S.D. Fla. Jan. 20, 2015).  The defendant argued that the plaintiff failed to plead actual damages under either theory so as to survive a motion to dismiss.  Id. at *20-21.  To start, the court noted that:

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

Id. at 21-22 (citing Rollins, Inc. v. Heller, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984)).

Applying <u>Rollins</u>, the court held that "the Plaintiff has met her burden at this stage of the litigation." <u>Id</u>. at *23.  Noting that the "Plaintiff has alleged in her amended complaint that 'the Products are misbranded and valueless," the court held:

> Whether the Products are valueless due solely to the misbranding, or because they were sold pursuant to an unfair business practice, and there is no market value for an unlawful product, Plaintiff has articulated enough facts to state a claim to relief that is plausible on its face.

<u>Id</u>. at *23-24 (internal citations and quotations omitted).  The court also held that the plaintiff's "price premium" theory alleged actual damages sufficient to satisfy the FDUTPA requirements, despite the fact that she did not specify or calculate the amount of damages in her complaint.  <u>See id</u>. at *22.

In the present case, Plaintiffs have clearly—and repeatedly—alleged that Church & Dwight's misrepresentations contained on their products labeling rendered said products "entirely valueless" to Plaintiffs.  <u>See</u>, <u>e.g.</u>, Doc. 10 at ¶ 33 ("Such false representations rendered Church & Dwight's product entirely valueless to Plaintiff DeVane and were it not for this false representation and warranty, she would not have purchased Church & Dwight's product.").  Plaintiffs have also clearly—and repeatedly—alleged that, at a minimum, they paid more for Church & Dwight's products than they otherwise would have due to the misrepresentations contained on the products' labels.  <u>See id</u>. ("Alternatively, because the product lacked all of the essential vitamins, it was worth less than she paid.").  Either way,

Plaintiffs have clearly satisfied the "actual damages" requirement under FDUTPA. See Bohlke, 2015 U.S. Dist. LEXIS 6054 at *22-24.   Accordingly, Church & Dwight's Motion should be denied as to Plaintiffs' FDUPTA Claim.

### D.   Plaintiffs' Breach of Implied Warranty Survives the Motion.

Church & Dwight next moves for summary judgment on Plaintiffs' claim for breach of the implied warranty, asserting that Plaintiffs failed to allege that the Products were unfit for their ordinary purpose.  See Doc. 16-1 at 26.  In order for Church & Dwight to seek dismissal on this ground, it relies on an incorrect assertion that Plaintiffs allege the Products' general purpose is as a "dietary supplement."  The insertion of facts related to "dietary supplements" is a creation of Church & Dwight that is not supported by the Amended Complaint.  See Doc. 16-1 at 14.  In reality, Plaintiffs allege that the Products are advertised by Church & Dwight to be "Complete Multivitamins" that contain all the "'essential' nutrients."  Doc. 10 at ¶¶ 1–3.  Church & Dwight's attempt to alter the "ordinary purpose" of the Products as "Complete Multivitamins" to be merely "dietary supplements" should not be countenanced.   In any event, Plaintiffs allege that the Products are "Complete Multivitamins" which failed that purpose because they lack at least four "essential" vitamins.  Id. at ¶ 2.

In the similar case of Nelson v. Xacta 3000, Inc., plaintiffs alleged that the implied warranty was breached because the foot pads were advertised to "remov[e]

toxins and impurities from the body" but did not do so.  2010 U.S. Dist. LEXIS 47128, at *8-9 (D.N.J. May 12, 2010).  Because the plaintiff alleged that the purpose of the foot pads was for the removal of toxins and impurities and that the foot pads failed to do so, the Nelson court denied Xacta's motion to dismiss.  Id.  Nelson is thus analogous to the instant facts and is in contrast with Church & Dwight's citation to In re Gerber Probiotics Sales Practices Litig, 2014 U.S. Dist. LEXIS 44810, at *38-40 (D.N.J. Mar. 31, 2014).  See Doc. 16-1 at 26.

In In re Gerber, the plaintiffs alleged that the infant food's advertising as having immune system benefits and being near equal to breast milk was a breach of the implied warranty because studies showed it did not have immune benefits and was not near breast milk.  2014 U.S. Dist. LEXIS 44810, at *3–9.  Importantly, the In re Gerber plaintiffs did "not dispute that the general purpose of the products was to function as infant food."  Id. at *39.  Because the In re Gerber plaintiffs admitted the general purpose of the infant food was to provide food to infants and not for immune benefits or as breast milk, the In re Gerber court dismissed the breach of implied warranty claim.  Id. at *40.

Crozier v. Johnson & Johnson Consumer Cos., 901 F. Supp. 2d 494, 509 (D.N.J. 2012), cited by Church & Dwight, is also factually inapposite to the instant case because the challenged advertisement did not relate to the product's general purpose.  Doc. 16-1 at 27.  The Crozier plaintiffs brought suit against the defendant,

alleging that the packaging of the product—an antiseptic spray without added antibiotics—was so similar in design to the defendant's other products which did contain antibiotics as to intentionally deceive consumers into believing that the product at issue did, in fact, contain antibiotics.  See Crozier, 901 F. Supp. 2d at 497.  The plaintiffs did not allege that the product's intended and general use was as an antibiotic and admitted that the product's "intended use is the prevention of infection and pain relief."  Id. at 497.  Thus, unlike in the instant case, there was no factual dispute as to the product's general use.  The challenged advertisement related not to the general purpose, but to the product's color scheme which the plaintiffs alleged was substantially similar to other products that contained antibiotics.  Id.  The Crozier plaintiffs did not allege that the products failed to prevent infection or relief, they merely alleged that it was false and deceptive for them to not contain antibiotics.  Id.  The Crozier court found that because the Plaintiffs alleged the general purpose was to prevent infection and pain relief, an advertisement that purportedly indicated the product also contained an antibiotic was not a breach of the implied warranty.  Id.

Church & Dwight further relies upon Lieberson v. Johnson & Johnson Consumer Cos., 865 F. Supp. 2d 529 (D.N.J. 2011), in support of its motion to dismiss, the facts are also distinguishable from the present case.  See Doc. 16-1 at 27.  As was the case with both In re Gerber and Crozier, the facts in Lieberson are

21

clearly distinguishable from the case at bar.  In <u>Lieberson</u>, the product at issue was a baby soap and lotion.   <u>Lieberson</u>, 865 F. Supp. 2d at 533.   The challenged advertising was that the baby soap and lotion was "Clinically Proven [to] Help Baby Sleep Better."  <u>Id</u>.  However, the undisputed general purpose of the baby soap and lotion was to cleanse and moisturize.  <u>Id</u>. at 542.  Unlike in the instant case, the challenged advertising in <u>Lieberson</u> had nothing to do with the undisputed general purpose of the baby soap and lotion.  Because the <u>Lieberson</u> plaintiff's allegations of false and deceptive advertising concerning making a baby's sleep better was "entirely unrelated" to the general purpose of cleansing and moisturizing, the <u>Lieberson</u> court dismissed the breach of implied warranty claim.  <u>Id</u>. at 543-44.

The facts of the instant case are more closely aligned with those of <u>Nelson</u>. Unlike in each case cited by Church & Dwight under this argument, Plaintiffs allege that Church & Dwight "impliedly warranted that the Products are 'complete multivitamins.'"  Doc. 10 at ¶ 75.  Each Plaintiff alleges that he or she purchased the Products because they were a "'complete multivitamin' containing 'essential' nutrients."  <u>Id</u>. at ¶¶ 30, 32, 38, 40, 43, 45, 50, & 52.  Thus, the general and ordinary purpose of the Products was to be a "complete multivitamin."   The Plaintiffs' challenged warranty is that the Products failed as being "Complete Multivitamins" because they did not contain each of the "essential" vitamins.  Church & Dwight's counter argument that the general purpose was merely a "dietary supplement" is not

supported by the Amended Complaint and at best is a question of fact not proper for

determination at the motion to dismiss stage.  Accordingly, the Motion should be

denied on this ground.

### E.   The Primary Jurisdiction Doctrine Does Not Mandate Dismissing or Staying Plaintiffs' Claims.[5]

Church & Dwight asserts that Plaintiffs' claims should be dismissed or stayed

pursuant to the doctrine of primary jurisdiction because "the question of which

vitamins consumers obtain in sufficient amounts through their diets, and therefore

may not need to be included in a 'complete' dietary supplement, is not within the

conventional experience of judge . . . [but] are within the FDA's field of expertise

and discretion."  Doc. 16-1 at 31-32.  Moreover, Church & Dwight argues that the

FDA's responsibilities for administering product labeling also works in favor of

dismissal under the primary jurisdiction doctrine.  See id. at 33.  Church & Dwight

is wrong on all counts.

---

[5] Church & Dwight pointedly asks this Court to dismiss Plaintiffs' Amended Complaint "in its entirety with prejudice pursuant to . . . the doctrine of primary jurisdiction.  Doc. 16-1 at p. 40.  However, the Supreme Court has specifically held that a district court which concludes that the primary jurisdiction doctrine mandates referral of the case to the applicable responsible federal agency should either stay the proceeding before it or dismiss it without prejudice.  See Reiter v. Cooper, 507 U.S. 258, 268-69 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." (emphasis added)).  Accordingly, if this Court determines that the primary jurisdiction doctrine demands that this case be referred to an agency and dismissed, such dismissal should be without prejudice.

The primary jurisdiction doctrine is intended to promote the avoidance of "conflict between the court and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court." MCI Commc'ns Corp. v. Am. Tel. & Tel. Co., 496 F.2d 214, 220 (3d Cir. 1974). However, "[t]his does not mean that a court must defer to an agency every time a course of action implicates regulations." Mason v. Coca-Cola Co., 2010 U.S. Dist. LEXIS 65107 at *3-4 (D.N.J. June 30, 2010) (citing Bus. Edge Group, Inc. v. Champion Mortg. Co., 519 F.3d 150, 154 (3rd Cir. 2007). Whether the doctrine of primary jurisdiction applies in a particular case is to be determined on a case-by-case basis. Global Naps, Inc. v. Bell Atlantic–New Jersey, Inc., 287 F. Supp. 2d 532, 549 (D.N.J. 2003). "The scope of the doctrine is relatively narrow," and "[c]ourts have not generally applied the primary jurisdiction doctrine where the issue is legal in nature and lies within the traditional realm of judicial competence." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 75 (E.D.N.Y. 2015) (internal citations and quotations omitted). For the reasons set forth below, Plaintiffs' Amended Complaint should neither be dismissed nor stayed pursuant to the primary jurisdiction doctrine and Church & Dwight's Motion should be denied.

1. **Deciding Plaintiffs' Claims Do Not Require Any Unique Expertise on the part of the FDA.**

In Bohlke v. Shearer's Foods, Ltd. Liab. Co., the plaintiff alleged that the

defendant made deceptive and misleading statements on its products' labels that its products were "all natural" and contained "no artificial ingredients" when, in fact, those statements were untrue.  Bohlke v. Shearer's Foods, Ltd. Liab. Co., 2015 U.S. Dist. LEXIS 6054 at *2-4 (S.D. Fla. Jan. 20, 2015).  The defendant argued that the plaintiff's claims should be dismissed under the primary jurisdiction doctrine because "analyzing and determining the meaning and implications of the term 'natural,' as used on food labels, are tasks within the purview of the FDA's functioning and expertise."  Id. at *8-9.  The district court rejected this argument, however, noting that previous courts have declined to dismiss similar claims premised on defendants' usage of the term "natural" because "the FDA simply does not regulate those claims."  Id. at *9-10.  The district court noted that the "FDA is free to promulgate regulations governing the term 'natural,' but ha[d] not done so."  Id. at *10.  The district court held that there was "no basis to stay or dismiss this case in deference to the FDA," as "[j]udges have experience interpreting terms in conjunction with parties' disputes, and the prospect of interpreting the term 'all natural' does not fall outside of that conventional experience."  Id.

Similarly, in Garcia v. Kashi Co., the plaintiff sued the defendant based upon claims that the defendant's labeling of its products as "all natural" were misleading and deceptive.  43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014).  The court rejected the defendants' attempt to dispose of the plaintiffs' claims on primary jurisdiction

grounds, stating that:

> Defendants' argument misses the mark. Plaintiffs' claims rest on the determination of whether Defendants' "all natural" and "nothing artificial" representations on their products' labeling are misleading and whether customers purchased Defendants' products in reliance upon these representations.

Id.  The court held that such a determination does not invoke "a technical area in which the FDA has greater technical expertise than the courts—as every day courts decide whether conduct is misleading." Id. (internal quotations omitted).

Florida district courts are hardly alone in holding that plaintiffs' claims of fraud and/or deceptive trade practices do not require the particular "expertise" of the FDA or other administrative agencies.  Other district courts throughout the country have reached similar conclusions.  See, e.g., In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig., 2013 U.S. Dist. LEXIS 37152, at *26 (D.N.H. March 18, 2013) (declining to dismiss plaintiff's claims pursuant to the primary jurisdiction doctrine because the "FDA does not have technical expertise related to questions of fraud and deceit. Courts, by contrast, routinely determine whether past conduct or statements were false or misleading"); Rikos v. Procter & Gamble Co., 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) (declining to apply the primary jurisdiction doctrine where the plaintiff's claims rested on a determination of whether a company's advertisements of a food supplement "are likely to deceive a reasonable consumer" under

26

California's consumer fraud statutes); Lockwood v. Conagra Foods, Inc., 597 F.
Supp. 2d 1028, 1035 (N.D. Cal. 2009) (declining to apply the primary
jurisdiction doctrine in false advertising case concerning definition and deceptive
use of the term "natural"); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111,
1124 (N.D. Cal. 2010) (stating that the plaintiffs advanced a "relatively
straightforward claim: they assert that defendant has violated FDA regulations and
marketed a product that could mislead a reasonable consumer," which "is a question
courts are well-equipped to handle"); Langan v. Johnson & Johnson Consumer Cos.,
95 F. Supp. 3d 284, 292 (D. Conn. 2015) (declining to apply the primary jurisdiction
doctrine to plaintiff's claims that defendant's labeling was misleading as such claims
are those "to which courts are eminently well suited, even well versed"); In re Frito-
Lay N. Am., Inc., 2013 U.S. Dist. LEXIS 123824 at *8 (E.D.N.Y. August 29, 2013)
("This case is far less about science than it is about whether a label is misleading,
and the reasonable-consumer inquiry upon which some of the claims in this case
depends is one to which courts are eminently well suited, even well versed." (internal
quotations and citations omitted)); Ackerman v. Coca-Cola Co., 2010 U.S. Dist.
LEXIS 73156 at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants
have violated FDA regulations and marketed a product that could mislead
a reasonable consumer is one courts are well-equipped to handle, and is not an
appropriate basis for invoking the primary jurisdiction doctrine.").

Church & Dwight argues that defining what it means for a dietary supplement to be "complete" is "strictly within the expertise and discretion of the FDA" and, therefore, Plaintiffs' complaint should be dismissed pursuant to the primary jurisdiction doctrine. See Doc. 16-1 at 34. Church & Dwight's assertion that "Plaintiffs' claims ask this Court to define what it means for a dietary supplement to be 'complete' based on an interpretation of the FDA's statements," misconstrues Plaintiffs' claims. Rather, Plaintiffs ask only that this Court to determine whether Church & Dwight's claims in its labeling and marketing that certain of its multivitamin products are "complete multivitamins" were misleading to named Plaintiffs and members of the Class. Plaintiffs have brought claims against Church & Dwight alleging, in part, that:

1. It breached the express warranties with their products ("Church & Dwight breached the express warranty which accompanied the Products by selling products that failed to conform to the descriptions of the Products upon their labeling and advertisements.");[6]

2. It breached the implied warranties with their products ("Church & Dwight breached the implied warranty of merchantability by selling the Products that failed to conform to the promises or affirmations of fact made on their containers and labels, to wit that they represent "complete multivitamins.");[7]

3. It breached the New Jersey Consumer Fraud Act ("Church & Dwight has engaged in unconscionable commercial practices or deceptive acts or practices where its conduct regarding the marketing of the Products as 'complete multivitamins; lacked honesty in fact, fair dealing, and

---

[6] Doc. 10 at ¶ 71.
[7] Doc. 10 at ¶ 82.

good faith or because it had the capacity to mislead consumers acting reasonably.");[8] and

4. It breached Florida's Deceptive and Unfair Trade Practices Act ("Church & Dwight's misrepresentations, omissions and deceptive practices as set forth above and throughout this Class Action Complaint, are likely to mislead reasonable customers under the circumstances.").[9]

Each of these claims requires only an examination into whether Church & Dwight's labeling of its products was misleading and, therefore, is something squarely within the conventional experience of district courts. See, e.g., Bohlke, 2015 U.S. Dist. LEXIS 6054 at *10; Garcia, 43 F. Supp. 3d at 1380. Not only is this something that courts are asked to determine on a routine basis, but the FDA has no special expertise dealing with fraud and deceit. See In re Colgate-Palmolive, 2013 U.S. Dist. LEXIS 37152 at *26.

### 2. Church & Dwight Has Identified No Pending Hearings or Imminent Rulings by the FDA which Will Create the Potential for Conflicting Decisions.

Church & Dwight next argues that Plaintiffs' claims should be dismissed because of the risk of inconsistent rulings should this Court retain jurisdiction. See Doc. 16-1 at 31. In support of this argument, it points to a 2016 action in which the FDA reassessed "its mandatory and voluntary vitamin and mineral declaration requirements." Id. at 34. Because of this "ongoing consideration," "Plaintiffs'

---

[8] Doc. 10 at ¶ 88.
[9] Doc. 10 at ¶ 96.

claims . . . pose a substantial risk of inconsistent determinations, and should be dismissed." Id.  However, Church & Dwight has identified no pending hearings by the FDA which could conflict with any decisions made by this Court.  Further, the FDA's action in 2016 does not evidence the FDA's intent to issue an imminent ruling as to what makes a multivitamin "complete," so as to create the risk of a result inconsistent with adjudicating Plaintiffs' claims before this Court.

In Burton v. Hodgson Mill, Inc., an Illinois district court recently examined similar arguments made by a defendant concerning said defendant's claim that its pancake mix was "all natural."  2017 U.S. Dist. LEXIS 53160 at *1 (S.D. Ill. Apr. 6, 2017).  In rejecting the defendant's attempt to have plaintiff's claims dismissed pursuant to the primary jurisdiction doctrine, the Court stated:

> the Defendant argues that this Court should stay this case under the doctrine of primary jurisdiction because the FDA may be in the process of formulating a more concrete definition of the term 'all natural.'  The Court is not persuaded by this argument for numerous reasons, including because the FDA last issued a call for proposals on the topic in the fall of 2016 and has not yet issued any further timeframe or next steps.  But, more importantly, the FDA's eventual formal definition has no bearing on a reasonable consumer's perception at the time this product was advertised and purchased.  Awaiting FDA action would unnecessarily protract this litigation. Accordingly, the Court denies this ground for dismissal.

Id. at *20-21 (emphasis added).  Importantly, the ruling in Burton was issued in April 2017, and the court there was not persuaded that FDA action as recently as 2016 was persuasive evidence that action by the FDA was imminent.  See id.

Further, the risk of conflicting rulings is minimal where the parties have not "identified any pending hearing before the FDA, or imminent ruling, on the issues involved in this case that would give rise to a conflict with the current regulatory scheme."   <u>Mason</u>, 2010 U.S. Dist. LEXIS 65107 at *5 (declining to dismiss plaintiff's claims under the primary jurisdiction doctrine). <u>See also</u> <u>Pom Wonderful Ltd. Liab. Co. v. Ocean Spray Cranberries, Inc.</u>, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009) (declining to apply the primary jurisdiction doctrine where the defendant failed to provide "any evidence that the FDA has actually taken any interest in investigating the claims or issues presented here").  The FDA is free to promulgate such regulations governing the term "complete," and the fact that it has not done so does not mandate deference to the FDA and dismissal of Plaintiffs' case.  <u>See</u> <u>Bohlke</u>, 2015 U.S. Dist. LEXIS 6054 at *10.  Finally, "[t]he primary jurisdiction doctrine should not be invoked if no administrative forum is available." <u>Fenner v. GM, LLC (In re Duramax Diesel Litig.)</u>, 298 F. Supp. 3d 1037, 1066 (E.D. Mich. 2018).  <u>See</u> <u>also</u> 5 ADMINISTRATIVE LAW § 47.03 (2019) ("The doctrine of primary jurisdiction will not be applied to a plaintiff's detriment when the institution of agency proceedings is wholly discretionary with the agency.  If no administrative forum is available, the court will re-assert its jurisdiction.").

Church & Dwight has not identified any pending hearing before the FDA—or any imminent ruling by the FDA—on the issues involved in this case which would

give rise to a conflict with the current regulatory scheme.  See Mason, 2010 U.S. Dist. LEXIS 65107  at *5.  While it did point to some action by the FDA from 2016, it has not identified any evidence that the FDA is currently revising these regulations or contemplating taking any action as to what constitutes a "complete multivitamin" as used by Church & Dwight on its labels when marketing its products and perceived by the Plaintiffs when purchasing them.  Not only is the FDA's action from three years ago insufficient to create a "substantial risk" of inconsistent determinations, but any action taken by the FDA has no bearing on a reasonable consumer's perception at the time this product was advertised and purchased. *See Burton*, 2017 U.S. Dist. LEXIS 53160  at *20-21 (noting that action by the FDA from only one-year prior was not sufficient to create a risk of inconsistent determination).  Finally, applying the doctrine of primary jurisdiction is inappropriate here, as there is no administrative forum through which Plaintiffs can seek recompense for the financial damages they suffered due to Church & Dwight's misrepresentations and deceptive practices.  See Fenner, 298 F. Supp. 3d at 1066.  Accordingly, applying the primary jurisdiction doctrine to bar Plaintiffs' claims would be inappropriate, and Church & Dwight's Motion should be denied.

### 3.    An Illinois District Court Has Already Ruled Against Church & Dwight on this Very Issue.

A District Court in the Southern District of Illinois overseeing another lawsuit involving Church & Dwight's multivitamin products recently addressed similar

arguments by Church & Dwight that the primary jurisdiction doctrine operated to bar the plaintiff's claims related to the labeling of its multivitamin product.  See Chavez v. Church & Dwight Co., Inc., 1:17-cv-01948 Doc. 298 (S.D.I.L. May 16, 2018).  After examining Church & Dwight's arguments, the court declined to apply the primary jurisdiction doctrine to bar the plaintiff's claims.  Id. at 17.  The Chavez court noted that:

> The principal difficulty with applying the primary jurisdiction doctrine here is that Church has not identified any relevant proceedings to which this Court should defer . . .  Absent some plausible proposal for obtaining a determination from the FDA, a stay would do nothing more than hold [plaintiff's] claim in limbo.  If Church were serious about deferring this issue to the FDA, it presumably would have explained what administrative proceedings could be initiated that would definitively interpret the provision and adjudicate [its] compliance.

Id. at 15-16.  The court further noted that Church & Dwight "also overstates the need to rely on the FDA's expertise," as the "case primarily concerns allegations of false and misleading representations, the sort of allegations that district courts routinely address."  Id. at 16.  Finally, while acknowledging that Church & Dwight's concerns related to consistency and uniformity carried "some weight," the court was more concerned by the fact that there was "no indication of when, if ever the FDA will act," and that "[e]ven if the FDA does act in the near future, there also is no guarantee that it would squarely address the issues raised in this litigation."  Id. at 17.  Because of this "uncertainty and likely prejudice [plaintiff] would face if granted, the Court

decline[d] to issue a stay based on the primary jurisdiction of the FDA." Id.

As discussed, *supra*, the *Chavez* court's reasoning and justifications fits squarely within the bounds of this case. For all of the reasons set forth above, Church & Dwight's motion to dismiss or stay Plaintiffs' claims on the basis of the primary jurisdiction doctrine should be denied.

### F.    Plaintiffs Have Standing.

In order for a plaintiff to have standing to bring a case, said plaintiff must demonstrate that they have suffered an "injury in fact" which is both "(a) concrete" and "(b) actual . . ." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "The contours of the injury-in-fact requirement, while not precisely defined, are very generous." Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982). The standard is met as long as the party alleges a specific "identifiable trifle" of injury. United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 690 n.14 (1973) (internal citations omitted).

Church & Dwight claims that Plaintiffs lack standing because they "have not plausibly alleged that they personally suffered any injury," "have not alleged that they were deceived by the allegedly false advertising," and have not "adequately alleged that they or the family members for whom they purchased the Products were harmed in any way by the products . . . ." See Doc. 16-1 at 36-37. This, however, is patently incorrect. Plaintiffs repeatedly allege that:

- the labeling constitutes deceptive advertising (see Doc.. at ¶¶ 32, 39, 44, 51);

- Plaintiffs were deceived by this advertising and relied upon Church & Dwight's advertising when purchasing the product (see id. at ¶¶ 30, 32, 33, 38, 39, 40, 43, 45, 50, 52);

- Church & Dwight's misrepresentations rendered their products essentially worthless to the Plaintiffs (see id. at ¶¶ 33, 41, 46, 53); and

- Plaintiffs "suffered actual and ascertainable damages" in at least the amount of money they spent purchasing Church & Dwight's products (see id. at ¶¶ 35, 48 55).

Such damages are concrete and actual and are—at the minimum—"an identifiable trifle" of an injury.  See Students Challenging Regulatory Agency Procedures, 412 U.S. at 690 n.14.  Accordingly, Plaintiffs have satisfied the standing requirements and Church & Dwight's Motion should be denied as to this point.

## IV.   CONCLUSION AND LEAVE TO AMEND

Plaintiffs maintain, for the reasons given above, that their Amended Complaint passes Rule 12(b)(6) muster and that Church & Dwight's Motion should be denied.  However, should this Court decide that additional pleadings are required, Plaintiffs request leave to amend.  "Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."  United States v. Union Corp., 194 F.R.D. 223, 236 (E.D. Pa. 2000) (quoting 6 Wright, Miller, & Kane § 1483, at 587).  To be sure, the Third Circuit Court of Appeals has found that leave

to amend should be granted where providing a plaintiff an opportunity to replead with sufficient factual allegations would cure the factual deficiencies.   <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3d Cir. 1988), <u>cert. denied</u>, 489 U.S. 1065, 103 (1989).  To be sure, under <u>Lieberson</u>, a case cited repeatedly by Church & Dwight in its Motion, the plaintiff there was granted leave to amend its already once amended complaint to conform the NJCFA claim to the court's order.  865 F. Supp 2d at 533.  Accordingly, if this Court finds that Plaintiffs' complaint fails for any reason, they should be granted leave to amend their factual allegations.

Date: August 19, 2019

<div style="margin-left:40%">

Respectfully submitted,
**HENINGER GARRISON DAVIS, LLC**

By:_ */s/ Taylor C. Bartlett*
Taylor C. Bartlett
2224 First Avenue North
Birmingham, AL  35203
Telephone: (205) 326-3336
Facsimile: (205) 380-8072
taylor@hgdlawfirm.com

**Attorney for Plaintiff**

</div>

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above document was filed today, August 19, 2019, via the Court's CM/ECF electronic filing system which automatically provides electronic notice to all counsel of record.

<div style="margin-left:40%">

*/s/ Taylor C. Bartlett*
Taylor C. Bartlett, N.J. Bar no. 142752015
Heninger Garrison Davis, LLC
220 Saint Paul Street
Westfield, NJ 07090
Tel: 205-326-3336
Fax: 205-380-8085
taylor@hgdlawfirm.com

</div>