UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

TAMMY DEVANE, MICHELLE
BARBATO, PETER BARBATO, AND
SHARON MAROLDI

   Plaintiffs,

v.

CHURCH & DWIGHT CO., INC.,

   Defendant.

Case No. 3:19-cv-09899-BRM-LHG

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Church & Dwight Co., Inc. ("Church & Dwight" or "Defendant") seeking to dismiss Plaintiffs Tammy Devane ("Devane"), Michelle Barbato, Peter Barbato, and Sharon Maroldi's ("Maroldi") (collectively, "Plaintiffs") Amended Class Action Complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) Plaintiffs filed an Opposition to Defendant's Motion to Dismiss. (ECF No. 19) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.**

 **I.**  **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also

considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from Church & Dwight's purportedly false labelling of several of their multivitamins, including L'il Critters Multivitamins, Vitafusion Women's Complete Multivitamins, and Vitafusion Men's Complete Multivitamins ("the Products"). (ECF No. 10 ¶ 1.) Defendant is a large Delaware corporation in the business of manufacturing a variety of household items, including the Products. (*Id.*) Unbeknownst to Plaintiffs and consumers who purchased the Products, the Products lacked at least three essential vitamins identified by the FDA as being "necessary for human health." (*Id.* ¶¶ 2-3.)

Plaintiffs are a group of consumers from both New Jersey and Florida.[1] Each Plaintiff purchased the Products relying on marketing and labelling that described the Products as a "complete multivitamin" containing all "essential nutrients." (*Id.* ¶¶ 31, 39, 51.) While Plaintiffs do not rely solely upon the FDA to define or justify their understanding of what a "complete" multivitamin is or what is "essential," the FDA does provide an identifiable baseline of which vitamins should be included for a multivitamin to be "complete." (*Id.* ¶ 15.) However, despite these representations, the Products do not contain all essential vitamins identified by the FDA, "including any vitamin K, thiamin, riboflavin and—in the case of Vitafusion Men's Complete Multivitamin and L'il Critters Gummy Vites Complete Multivitamin—niacin." (*Id.* ¶ 21.)

On April 15, 2019, Devane filed a Complaint against Defendant. (ECF No. 1.) On June 7, 2019, Defendant filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 7.) In response,

---

[1] Devane is a citizen of Florida, and Michelle Barbato, Peter Barbato, and Sharon Maroldi are citizens of New Jersey. (ECF No. 10 ¶¶ 5-8.)

Plaintiffs filed a seven-count Amended Complaint against Defendant asserting claims for breach of express warranty under New Jersey law (Count One), breach of implied warranty under New Jersey law (Count Two), violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Three), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count Four), breach of express warranty under common law (Count Five), breach of implied warranty under common law (Count Six), and injunctive relief (Count Seven). (ECF No. 10.) Defendant filed a Motion to Dismiss the Amended Complaint on July 26, 2019. (ECF No. 16.) On August 19, 2019, Plaintiffs filed an Opposition to the Motion to Dismiss. (ECF No. 19.) On September 10, 2019, Defendant filed a Reply to the Opposition to the Motion to Dismiss. (ECF No. 20.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec.*

*Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. Doctrine of Primary Jurisdiction

Defendant requests this Court dismiss or stay the Amended Complaint in its entirety based on the doctrine of primary jurisdiction. (ECF No. 16-1 at 35.) The doctrine "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *U.S. v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963). In determining whether to apply the doctrine of primary jurisdiction, courts in this District consider:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Clark v. Actavis Grp. hf*, 567 F. Supp. 2d 711, 715 (D.N.J. 2008).

Because Plaintiffs bring claims under both New Jersey and Florida law, the Court will analyze Defendant's primary jurisdiction argument under both New Jersey and Florida law. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1381 (S.D. Fla. 2014) (analyzing a primary jurisdiction challenge of Florida and California state law claims under both Florida and California law). Here,

5

both New Jersey and Florida law dictate this Court should not invoke primary jurisdiction on any of Plaintiffs' claims.[2]

The primary issue with applying primary jurisdiction in this case is Defendant has not identified any relevant proceedings to which this Court should defer in resolving the case. Therefore, Defendant has not identified any FDA rulings which may give rise to a conflict with the current regulatory scheme. As such, Defendant has failed to satisfy the third prong of the analysis because it has not demonstrated a substantial danger of inconsistent rulings. *See Mason v. Coca-Cola Co.*, No. 09-220, 2010 U.S. Dist. LEXIS 65107, at *5 (D.N.J. June 30,2010) (finding no risk of inconsistent ruling where defendant had not "identified any pending hearing before the FDA, or imminent ruling"). Additionally, absent any relevant proceedings, Defendant has failed to satisfy the fourth prong of the analysis. Therefore, a stay of the case at this point would do nothing more than hold Plaintiffs' claim in limbo. *See Chavez v. Church & Dwight Co.*, No. 17-1948, 2018 U.S. Dist. LEXIS 82642, at *22 (N.D. Ill. May 16, 2018).

Furthermore, Defendant has overstated the need to rely on the FDA's expertise. Defendant claims that defining the term "complete" in regard to a dietary supplement is "squarely within the FDA's particular filed of expertise and discretion." (ECF No. 16-1 at 39.) However, Plaintiffs' claims do not require this Court to define "complete," but rather require the Court to determine whether Defendant's labelling of its Products as "complete multivitamins" was misleading. (ECF

---

[2] Federal courts sitting in diversity apply the choice of law rules of the forum state. *Collins v. Mary Kay*, 874 F.3d 176, 183 (3d Cir. 2017). New Jersey has adopted the "most significant relationship" test, which first requires the court to determine if there exists an actual conflict between state substantive law. *P.V ex. Rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). Because there is no conflict between New Jersey and Florida law, this Court does not need to conduct a full choice of law analysis. *See Manisclaclo v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 704 (citing *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997)) ("Where there is no actual conflict, the analysis ends . . .").

No. 19 at 33.) First, the question at issue here does not involve technical or policy considerations within the agency's particular field of expertise. Notably, courts have declined to dismiss similar claims because an examination of whether a product's advertising is misleading is evenly within the conventional experience of district courts. *See, e.g., Bohlke v. Shearer's Foods, Ltd. Liab. Co.*, No. 14-80727, 2015 U.S. Dist. LEXIS 6054, at *8-9 (S.D. Fla. Jan. 20, 2015) ("Judges have experience interpreting terms in conjunction with parties' disputes, and the prospect of interpreting the term 'all natural' does not fall outside of that conventional experience"); *Garcia*, 43 F. Supp. 3d at 1380 ("every day courts decide whether conduct is misleading"). Therefore, the question of whether the Products were misleading is within the purview of this Court's conventional experience and does not require the FDA's expertise.

Ultimately, in weighing the above factors, this Court declines to invoke the doctrine of primary jurisdiction. Accordingly, Defendant's Motion to Dismiss or stay the Amended Complaint on these grounds is **DENIED.**

### B. Standing

#### 1. Article III Standing

Defendant contends Plaintiffs lack Article III standing because they have not alleged they have suffered an injury in fact. (ECF No. 16-1 at 41.)

To establish Article III standing, a Plaintiff must show he or she: (i) personally suffered an injury in fact; (ii) the injury is fairly traceable to the defendant's conduct; and (iii) the injury is likely to be redressed by a favorable decision. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, Plaintiffs have adequately alleged an injury in fact to invoke Article III standing. Initially, Plaintiffs have adequately alleged they were deceived by the purportedly false advertising. Further, Plaintiffs have alleged an actual injury by claiming the Products were

"completely valueless"—of which the damages are at minimum the amount of money spent purchasing the Products. (*See* ECF No. 10 ¶¶ 35, 48, 55.) Additionally, Plaintiffs have demonstrated the injury is traceable to the illegal conduct by alleging they relied upon Defendant's advertisement when purchasing the Products. (*See id.* ¶¶ 32-33, 38-39, 40, 43, 45, 50, 52.) Accordingly, Defendant's Motion to Dismiss the Amended Complaint for lack of Article III standing is **DENIED.**

### 2. Injunctive Relief Standing

Finally, Defendant contends Plaintiffs do not have standing to seek injunctive relief. (ECF No. 16-1 at 42.) Specifically, Defendant contends plaintiffs alleging false advertising may not seek injunctive relief where they have become aware of the allegedly deceptive advertising. (*Id.* at 43.) Plaintiffs do not dispute this.

At this point, Plaintiffs are aware the Products do not contain all vitamins "essential in human nutrition." Therefore, there is no risk that Plaintiffs will be misled in the future. *See, e.g., Miller v. Samsung Elecs. Am. Inc.*, 2016 U.S. Dist. LEXIS 158547, at *13-14 (D.N.J. Nov. 16, 2016) ("In order for Plaintiff to be misled, he would have to ignore his past dealings with Defendant and its products."); *Robinson v. Hornell Brewing Co.*, 2012 U.S. Dist. LEXIS 51460, at *15 (D.N.J. Apr. 11, 2012) (because plaintiff was aware of the allegedly deceptive advertising, he could "control the risk of [future] injury by merely refraining from buying [the product]"). Accordingly, Defendant's Motion to Dismiss Count Seven of the Amended Complaint is **GRANTED.**

### C. 12(b)(6)

#### 1. Assertion of False Advertising

Defendant first contends Plaintiffs fail to state a claim because they do not allege the advertising at issue was false or deceptive. (ECF No. 16-1 at 16.) Specifically, Defendant argues Plaintiffs do not claim Defendant's use of the term "complete" was false or deceptive. (*Id.* at 17.)

Plaintiffs have adequately pled they were deceived by Plaintiffs allegedly false advertisements. Indeed, Plaintiffs claim Defendant's "marketing of the Products as 'complete' and containing the 'essential nutrients' as meaning the Products contain all the essential nutrients, including those missing from them." (ECF No. 10 ¶ 3.) Specifically, Plaintiffs allege—and Defendant does not dispute—the Products are advertised as "Complete Multivitamins." (*See Id.* ¶¶ 23-25.) Despite the advertisement, Plaintiffs pled the Products were not "complete" because they lack "several of the essential vitamins identified by the FDA as being necessary for human health."[3] (*Id.* ¶ 2.) Ultimately, Plaintiffs allege Defendant's marketing and labelling of the Products was false and misleading because the term "complete" lead Plaintiffs and other consumers to believe the Products contained all "essential nutrients"—even though the Products lacked vitamins deemed essential by the FDA. (*See generally* ECF No. 10.) At this stage, based on these allegations, Plaintiffs' have sufficiently stated a claim for false advertising. *See In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 44810, at *16 (D.N.J. Mar. 31, 2014) (internal quotations omitted) ("At the pleading stage . . . a plaintiff is 'not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or

---

[3] Plaintiffs also identify the exact vitamins from the FDA's essential list missing in the Products—"vitamin K, thiamin (vitamin B-1), and riboflavin (vitamin B-2), while Vitafusion Men's Complete Multivitamins and L'il Critters Multivitamins additionally lack niacin (vitamin B-3)." (ECF No. 10 ¶ 2.)

statements.'") Accordingly, Defendant's Motion to Dismiss the Amended Complaint on these grounds is **DENIED.**

### 2. NJCFA Claim

Defendant contends the NJCFA claim should be dismissed because Plaintiffs fail to allege they have suffered an ascertainable loss or a causal relationship. (ECF No. 16-1 at 23.)

To properly plead a NJCFA claim, a plaintiff must allege "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Marshall v. Verde Energy United States*, No. 18-1344, 2019 U.S. Dist. LEXIS 220421, at *7-8 (D.N.J. Dec. 19, 2019) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)). To properly plead the ascertainable loss prong, a plaintiff must establish he or she suffered a "definite, certain and measurable loss," which is not "merely theoretical." *Petinga v. Sears, Roebuck & Co.*, No. 05-5166, 2009 U.S. Dist. LEXIS 48693, at *27 (D.N.J. June 9, 2009) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 750 (N.J. 2009)). An ascertainable loss includes more than a monetary loss and may occur when a customer receives less than what was promised. *See Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *8 (D.N.J. Apr. 26, 2007); *see also Miller v. Am. Fam. Publishers*, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995) ("For their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable loss.")

"There are at least three recognized theories of ascertainable loss that may apply to a [NJCFA] claim." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *22 (D.N.J. Mar. 26, 2012). For example:

> In cases involving product misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the

> ascertainable loss hurdle . . . . The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered. Under the third theory, an ascertainable loss can include a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund.

*Id.* at *22-23 (internal quotation marks and citations omitted)

Here, Plaintiffs' allegations regarding ascertainable loss seem to center on the out-of-pocket theory. *Id.* at *22 (analyzing claims under an out-of-pocket theory where plaintiffs claimed the products purchased were "essentially valueless"). To sufficiently plead an out-of-pocket expense, a plaintiff must allege: (1) he spent money in connection with a CFA violation, and (2) the product purchased was essentially worthless. *See Annecharico v. Raymour & Flanigan*, 2016 U.S. Dist. LEXIS 164769, at *20 (D.N.J. Nov. 30, 2016) (citing *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015)).

Plaintiffs have adequately alleged ascertainable loss under the out-of-pocket theory. First, they allege the Products were labelled as a "complete multivitamin" even though the Products did not contain several vitamins identified as "essential" by the FDA. (ECF No. 10 ¶ 2.) As such, Plaintiffs allege the Products could not function as a "complete multivitamin" and were therefore "entirely valueless." (ECF No. 10 ¶¶ 33, 41, 46, 53.) Defendant relies on cases where the plaintiffs failed to identify the problems with the products at issue that causes its uselessness. *See Annecharico*, 2016 U.S. Dist. LEXIS 164769, at *21 ("Plaintiff does not identify the problems that he was experiencing . . . it is difficult to discern whether the [product] was in fact worthless."). Here, Plaintiffs explicitly allege the deficiencies that caused the Products to be "entirely valueless," and as such have pled an ascertainable loss.

Additionally, Defendant contends Plaintiffs have not pled a causal relationship between the alleged unlawful conduct and any such loss. (ECF No. 16-1 at 28.) The NJCFA does not require a plaintiff to demonstrate he actually relied upon a misrepresentation or omission. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (citing *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc* 929 A.2d 1076 (N.J. 2007)). However, a plaintiff must demonstrate that the ascertainable loss was suffered "as a result of" the defendant's unlawful conduct. N.J. STAT. ANN. § 56:8-19 (2004). Therefore, a CFA plaintiff can include persons who "saw the challenged advertisements" and "would not have purchased the [product] but for the challenged advertisements." *Gross v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 696 A.2d 793, 798 (App. Div. 1997).

Here, Plaintiffs contend they "purchased the Products because of the misleading statements" and they "would not have purchased the Products had they known their true nature." (ECF No. 10 ¶¶ 32-33, 40-41, 45-46, 52-53.) Plaintiffs therefore assert the but-for cause of their purchases was the marketing of the Products to represent the Products contained all "essential" vitamins. They specifically allege they were induced by the packaging of the Products and the words "complete multivitamin." Contrary to Defendant's contentions, these allegations are not "generalized and conclusory," but rather demonstrate a causal nexus between Defendant's claimed misrepresentation and Plaintiffs' purchases. As such, Plaintiffs have properly asserted a causal relationship and have therefore properly pled a NJCFA claim. Accordingly, Defendant's Motion to Dismiss Count Three of the Amended Complaint is **DENIED.**

### 3. FDUTPA Claim

Defendant contends the FDUTPA Claim should be dismissed because Plaintiffs have not alleged actual damages. (ECF No. 16-1 at 21.) Specifically, Defendants argue (1) Plaintiffs have made "conclusory allegations" regarding their "legally inadequate and facially implausible" damages, and (2) have failed to allege that any damage was caused by a deceptive act or unfair practice. (ECF No. 16-1 at 30.)

To bring a cause of action under the FDUTPA, a plaintiff must plead: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *See Nazario v. Prof'l Acct. Servs., Inc.*, 2017 U.S. Dist. LEXIS 47267, at *13 (M.D. Fla. Mar. 29, 2017) (citation omitted). To allege actual damages, a plaintiff must specifically plead either: (1) the difference between the market value of the product in the condition in which it was delivered as compared to what was expected, or (2) the product was rendered entirely valueless as a result of the defendant's alleged misrepresentations. *See, e.g. QSGI, Inc. v. IBM Global Fin.*, 2012 U.S. Dist. LEXIS 49601, at *13 (S.D. Fla. Mar. 13, 2012); *ADT LLC v. Vivint, Inc.*, 2017 U.S. Dist. LEXIS 123516, at *13 (S.D. Fla. Aug. 3, 2017).

First, this Court has already determined Plaintiffs have alleged the damage was caused by a deceptive act or unfair practice. *See supra* p. 8-9. Additionally, Plaintiffs have adequately pled actual damages by alleging the Products were rendered entirely valueless as a result of Defendant's misrepresentations. As stated above, Plaintiffs alleged the Products were labelled as a "complete multivitamin" even though the Products did not contain several vitamins identified as "essential" by the FDA. (ECF No. 10 ¶ 2.) Because of this, the Products were not "complete" and were therefore "entirely valueless." (ECF No. 10 ¶¶ 33, 41, 46, 53.) Ultimately, Plaintiffs have properly

alleged a deceptive act, causation, and actual damages. Accordingly, Defendant's Motion to Dismiss Count Four of the Amended Complaint is **DENIED.**

### 4. New Jersey Breach of Implied Warranty Claim

Defendant first contends the implied warranty claim should be dismissed because Plaintiffs failed to bring pre-litigation notice of the claim. (ECF No. 16-1 at 31 n.7.) However, this is not a required step. This Court has held the lack of pre-litigation notice of breach of warranty claims does not obviate dismissal of those claims. *See Taylor v. JVC Ams. Corp.*, No. 07-4059, 2008 U.S. Dist. LEXIS 43215, at *20 (D.N.J. May 29, 2008) (citing *Strzawolski v. GMC*, No. 04-4740, 2005 U.S. Dist. LEXIS 18111, at *3 (D.N.J. Aug. 16, 2005)). Therefore, Defendant's Motion to Dismiss on this ground is denied.

Additionally, Defendant contends Plaintiffs' claim for breach of implied warranty is insufficiently pled because Plaintiffs simply allege the Products did "not conform to the promises or affirmations of fact made on their labels." (ECF No. 16-1 at 31.) To properly plead a breach of implied warranty claim, a plaintiff must allege "the product at issue [was] defective or not fit for the ordinary purpose for which it was intended." *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2014 U.S. Dist. LEXIS 44810, at *38 (D.N.J. Mar. 31, 2014) (quoting *In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *16 (D.N.J. Sept. 11, 2009)). To be fit for its ordinary purpose, a product need not meet all buyer expectations or be entirely free of defects; but rather it must merely function for "the *general* purpose for which it is manufactured and sold." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011)

Defendant argues the ordinary purpose of the Products was to "provide consumer with supplemental nutrition in a safe and non-toxic manner." (ECF No. 16-1 at 33.) Plaintiffs, however,

argue the ordinary purpose of the Products was to be a "complete multivitamin." (ECF No. 19 at 24.) Plaintiffs allege Defendant represented—through the packaging and marketing—the Products were "complete multivitamins" and therefore contained all "essential" nutrients. (ECF No. 10 ¶¶ 1-3.) However, because the Products lacked several essential nutrients, Plaintiffs allege the Products "do not conform to the promises or affirmations of fact made on their labels." (*Id.* ¶¶ 76-82.) Plaintiffs support these allegations by providing images of the Products which clearly display the terms "Complete Multivitamin." (*See id.* ¶¶ 22-25.) By alleging the Products do not function in accordance with their packaging, Plaintiffs have properly alleged the Products were not fit for their ordinary purpose. *See Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2010 U.S. Dist. LEXIS 47128, at *22-23 (D.N.J. May 12, 2010). Accordingly, Defendant's Motion to Dismiss Count Two of the Amended Complaint is **DENIED.**

### 5. Common Law Breach of Warranty Claims

Counts Five and Six of the Amended Complaint assert common law breaches of express and implied warranty, respectively, under unspecified state law. (ECF No. 10 ¶¶ 98-107.) Defendant's Motion to Dismiss assumes both these claims are under Florida law. (ECF No. 16-1 at 33 n.8.) Moreover, in their moving papers, Plaintiffs not only fail to dispute this assumption, but also fail to respond to the Motion to Dismiss Counts Five and Six. Therefore, for purposes of addressing the motion, the Court assumes Plaintiffs bring Counts Five and Six under Florida law. If Plaintiffs decide to amend their pleadings, they must make clear whether Counts Five and Six are being asserted under Florida law or the law of some other state(s). *See Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1123 (N.D. Ca. 2019) (deciding a motion to dismiss a common law breach of warranty claim under unspecified state law using the movant's interpretation of the complaint).

### i. Express Warranty

Defendant first contends Plaintiffs' breach of express warranty claim should be dismissed for failure to provide pre-litigation notice of the claims. (ECF No. 16-1 at 33.) To state a claim for breach of express warranty under Florida common law, a plaintiff must allege they provided pre-suit notice of the breach. *See, e.g., Sclar v. OsteoMed, L.P.*, No. 17-23247, 2018 U.S. Dist. LEXIS 11373, at *6 (S.D. Fla. Jan. 24, 2018) ("[B]ecause the Amended Complaint does not allege that Plaintiffs complied with Florida's pre-suit notice requirement, Plaintiffs have failed to state a claim for breach of express warranty.")

Plaintiffs do not allege they provided Defendant with pre-suit notice of their breach of express warranty claim. As such, Plaintiffs fail to state a claim for breach of express warranty under Florida law. Accordingly, Defendant's Motion to Dismiss Count Five of the Amended Complaint is **GRANTED.**

### ii. Implied Warranty

Additionally, Defendant contends Plaintiffs' breach of implied warranty claim should be dismissed because there is no privity between the parties. (ECF No. 16-1 at 34.)

"To state a claim for breach of implied warranty, Florida Courts require privity" between the parties. *Thompson v. McNeil-PPC, Inc.*, 2012 U.S. Dist. LEXIS 194501, at *11 (M.D. Fla. 2012) (citing cases). Plaintiffs allege they purchased the Products from Walgreens, Wal-Mart, and Shoprite. (ECF No. 10 ¶¶ 29, 37, 42, 49.) Because Plaintiffs do not allege they purchased the Products directly from the manufacturer or are otherwise in privity with Defendant, they fail to state a breach of implied warranty claim. *See Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006) (affirming dismissal of implied warranty claim where plaintiff did not purchase the product directly from or otherwise allege privity with defendant manufacturer.)

Accordingly, Defendant's Motion to Dismiss Count Six of the Amended Complaint is **GRANTED.**

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** with respect to Counts Five, Six, and Seven, and **DENIED** with regards to Counts One, Two, Three, and Four as set forth herein and in the accompanying order.

**Date: February 28, 2020**               */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**